UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B., <br><br>             Plaintiff, <br><br>     v. <br><br>RICHARD K. VARRASSO doing business as Richard Varrasso and Associates and AppraisalTrust.com, an individual; PREMIER VALLEY, INC. doing business as CENTURY 21 M&M ASSOCIATES, a California corporation; and KAREN BHATTI, an individual, <br><br>             Defendants. <br> _____/ | NO. CIV. 2:11-2628 WBS CKD <br><br> <u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS AND MOTION TO STRIKE</u> |

----oo0oo----

Plaintiff Federal Deposit Insurance Corporation ("FDIC") as Receiver for Indymac Bank, F.S.B. ("Indymac") brought this action against defendants Richard K. Varrasso, doing business as Richard Varrasso and Associates and AppraisalTrust.com, Premier Valley, Inc. ("Premier"), doing

1

business as Century 21 M&M Associates, and Karen Bhatti, arising out of defendants' allegedly wrongful misrepresentations regarding the purchase of two residential properties. Presently before the court is Premier and Bhatti's motion to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and motion to strike portions of plaintiff's Complaint pursuant to Rule 12(f).

I.   Factual and Procedural Background

Between March 16, 2006, and October 18, 2006, the property located at 2009 Saint Theresa Way in Modesto, California (the "Weisbly Property" or "Property") was listed for sale on the Multiple Listing Service ("MLS") for different prices between $439,000 and $469,000. (Compl. ¶ 9.) No sale of the Property was finalized during this period. (Id.) The listing agent on the Property was Bhatti, who was employed by Premier. (Id.)

On October 26, 2006, a purchase contract was signed for the Property in the amount of $499,000. (Id. ¶ 10.) Plaintiff alleges that subsequent to the purchase contract being signed, Bhatti re-listed the Property on MLS for $499,000 on November 13, 2006. (Id.)

On October 28, 2006, Varrasso appraised the Weisbly Property for $520,000. (Id. ¶ 12.) Varrasso was hired by the buyer's lender, Kay-Co Investments, doing business as PRO30 Funding ("Kay-Co") to conduct the appraisal. (Id. ¶ 24.)

On December 15, 2006, Kay-Co funded and subsequently sold to Indymac two mortgages totaling $499,000 for the Property (a first mortgage of $399,200 and a second mortgage of $99,800)

2

(the "Weisbly Loans").  (Id. ¶ 11.)  The HUD-1 Settlement Statement[1] indicates a proration date of December 18, 2006. (DeLeon Decl. Ex. A (Docket No. 29).)  The HUD-1 Settlement Statement for the Weisbly Loans indicates that the commissions paid to Bhatti and Premier were calculated based upon a sales price of $449,000, not the loan amount of $499,000.  (Compl. ¶ 13.)  The HUD-1 also indicates that, in addition to her percentage-based commission, an additional $25,000 of the loan proceeds were paid directly to Bhatti.  (Id. ¶ 14.)

On July 11, 2008, pursuant to Order 2008-24 issued by the Office of Thrift Supervision, IndyMac was closed and the FDIC was appointed as receiver.  (Opp'n to Mot. to Dismiss at 11:7-8.) IndyMac's legal claims were retained by or transferred to the FDIC.  (Compl. ¶ 1.)

Plaintiff filed its Complaint in the Northern District of California on July 6, 2011, alleging six claims for relief. The court subsequently transferred the case to the Eastern District of California after finding that the interests of

---

[1] When deciding a motion to dismiss, a court may not ordinarily consider material other than the facts alleged in the complaint.  Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must be treated as a motion for summary judgment . . . if either party . . . submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.").  "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  Premier and Bhatti attached a copy of the HUD-1 Settlement statement as an exhibit to their motion to dismiss.  As the existence of the HUD-1 Settlement Statement is alleged in the Complaint, is central to plaintiff's claims, and neither party has questioned its authenticity, the court may consider the HUD-1 Settlement Statement as part of the Complaint.

3

convenience and justice weighed in favor of the transfer. (Docket No. 24.) The moving defendants, Premier and Bhatti, are named in the third and fourth claims: a state law claim of negligence and a state law claim of negligent misrepresentation. (Compl. ¶¶ 33-44.) Premier and Bhatti now move to dismiss both claims against them and to strike plaintiff's request for attorney's fees and Item 1 from plaintiff's prayer for damages.

II.  Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, ----, 129 S. Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

A.  Negligence Claim (Third Claim)

To prove a cause of action for negligence, plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal.

4

App. 4th 1333, 1339 (2d Dist. 1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." <u>Vasquez v. Residential Invs., Inc.</u>, 118 Cal. App. 4th 269, 278 (4th Dist. 2004).

The parties have presented no authority, and the court is aware of none, that directly addresses the duties a seller's real estate agent owes to subsequent purchasers of loans regarding which they have made material misrepresentations. California cases do recognize a fundamental duty on the part of a realtor to deal honestly and fairly with all parties in a real estate transaction. <u>See, e.g.</u>, <u>Nguyen v. Scott</u>, 206 Cal. App. 3d 725, 735 (1st Dist. 1988). Defendants' allegedly false representation of the sale price of the Property on the HUD-1 Settlement Statement was made directly to Kay-Co, the original lender. Kay-Co was therefore a party to the real estate transaction in question. The parties agreed at oral arguments that Premier and Bhatti owed a legal duty to deal fairly and honestly with Kay-Co, as a party to the transaction.

Upon sale of the Weisbly Loans, the rights underlying the loan were transferred from Kay-Co to IndyMac, as the subsequent purchaser of the loans. The question, therefore, is whether Premier and Bhatti's duty to deal fairly and honestly with Kay-Co was thereupon transferred to IndyMac. Plaintiff alleges in its Complaint that IndyMac purchased the Weisbly Loans from Kay-Co. For the purposes of this motion to dismiss, the court accordingly infers that when IndyMac purchased the Weisbly Loans from Kay-Co, all of Kay-Co's rights and duties under the

5

loan were assigned to IndyMac. Although not every right is assignable, assignability is the general rule and nonassignability is the exception. Goodley v. Wank & Wank, Inc., 62 Cal. App. 3d 389, 393 (2d Dist. 1976) (noting that only causes of action for personal injuries arising out of a tort and those founded upon wrongs of a purely personal nature are not assignable); see also Cal. Civ. Code § 1458 ("A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such."). As the purchaser of the Weisbly Loans, IndyMac stepped into the shoes of Kay-Co and is entitled to assert any claims arising out of the initial real estate transaction. Johnson v. Cnty. of Fresno, 111 Cal. App. 4th 1087, 1096 (5th Dist. 2003) ("The assignment merely transfers the interest of the assignor. The assignee 'stands in the shoes' of the assignor, taking [its] rights and remedies . . . .") (citations omitted).

Plaintiffs argue that permitting subsequent purchasers to assert claims would unduly expand real estate agents' liability. Such an expansion of liability would not result. Agents remain liable to a single party -- the owner of the loan -- rather than an infinite number of parties. This is a desirable result, as transferring agents' duties to the assignee of the loan preserves the liability of real estate agents for their representations during the formation of the loans to whomever currently owns the loans. To hold otherwise would be to deprive subsequent purchasers of mortgage loans a remedy for fraudulent or negligent conduct during the initial loan transaction. This would give participants in mortgage fraud a free pass for their

6

conduct the moment the loan is sold, a practice which has become increasingly common. In light of the absence of specific caselaw on the subject, it would seem to the court that the parties to a real estate transaction owe a duty of honesty not only to the lender but to future purchasers of the real estate loan as well.

Even without finding that IndyMac inherited Kay-Co's claims resulting from the transaction, the moving defendants could still be held liable based on their general duty to third parties to the loan transaction. "There is little question that a real estate broker owes a duty of care to third persons in the transaction, where the broker does not have privity with, or fiduciary duties to, such third person. The question is the extent of that duty that will be imposed on the broker." Norman I. Krug Real Estate Invs., Inc. v. Praszker, 220 Cal. App. 3d 35, 42 (1st Dist. 1990) (quoting 2 Miller & Starr Cal. Real Estate § 3.27 (2d ed. 1989)). The determination of whether a defendant will be held liable to a third person not in privity with the defendant is made by weighing a number of factors, including "the extent the transaction was intended to affect the third party, the foreseeability of harm, the degree of certainty the third party suffered injury, the moral blame attached to the broker's conduct, and the policy of preventing future harm." Id.; see also Merrill v. Buck, 58 Cal. 2d 552, 562 (1962) (outlining similar factors and also including the closeness of the connection between the defendant's conduct and the injury suffered).

Under the first factor, the extent the transaction was intended to affect the third party, Premier and Bhatti's

7

representations of the Property's purchase price were clearly meant to influence Kay-Co's loan determination.  Given the likelihood that the loan would be sold to a third party, as evidenced both by industry practice and by the fact that the loan in question was sold by Kay-Co on the very day that it was funded, the moving defendants' representations were used to create a product (the Weisbly Loans) that would foreseeably be sold and resold over the course of its life.  Premier and Bhatti's alleged misrepresentations were an important input into the subsequent loan product that would affect each subsequent purchaser of the loan product.  Defendants' intent to affect Kay-Co, coupled with the foreseeability that the loan would subsequently be sold to a third party, suggests that they intended the transaction to affect subsequent purchasers of the loan.  Drawing all reasonable inferences in favor of plaintiff, the court finds that Premier and Bhatti intended to affect the current lender as well as subsequent purchasers of the loan when they reported the purchase price of the property on the HUD-1 Settlement Statement.

With respect to the second factor, foreseeability of harm, California courts have de-emphasized the importance of foreseeability in liability analysis, noting that it is not a substitute for legal duty, Burger v. Pond, 224 Cal. App. 3d 597, 606 (4th Dist. 1990), and is only one factor in determining negligence liability, Bily v. Arthur Young & Co., 3 Cal. 4th 370, 398-99 (1992).  "Experience has shown that . . . there are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone

provides a socially and judicially acceptable limit on recovery of damages for that injury." Thing v. La Chusa, 48 Cal. 3d 644, 668 (1989).  Premier and Bhatti argue that foreseeability and the degree of certainty factors weigh in their favor because plaintiff's injury is several steps removed from the transaction. The fact that IndyMac was one step removed from the transaction does not establish lack of foreseeability if it was reasonably foreseeable that the real estate loan would be re-sold. Plaintiff noted in oral arguments that the Weisbly Loan documents specifically state the loan could be sold to a new loan company, which is common industry practice.  Drawing all inferences in favor of plaintiff on this motion to dismiss, the factor of foreseeability weighs in favor of plaintiff.

   The third factor, degree of certainty the third party would suffer injury, similarly weighs in favor of plaintiff. Given the foreseeability of the loan's transfer, the fact that the loan totaled $50,000 more than the actual purchase price creates a reasonably certain risk that the subsequent owner of the loan would suffer harm.

   The fourth factor, moral blame, and the fifth factor, the public policy of preventing future harm and discouraging misrepresentations in loan transactions, also weigh in favor of plaintiff.  Premier and Bhatti's actions can be distinguished from those of the defendants in Rainer v. Grossman, 31 Cal. App. 3d 539 (2d Dist. 1973), on which defendants rely heavily.  In Rainer, plaintiff's treating physician presented the defendant physician with plaintiff's medical history and sought advice regarding how to treat plaintiff.  Id. at 541.  Plaintiff sued

9

defendant after undergoing an unsuccessful surgery.  Id.  The court held that defendant could not be found liable for negligence after finding that the defendant did not engage in any morally blameworthy behavior and the value to the medical community and the public of facilitating discussion and consultation between physicians was significant and should not be discouraged.  Id. at 544.  There is no such lack of moral blame and pressing public policy suggesting that imposing a duty would be inappropriate in the present case.

Premier and Bhatti argue that allowing lending institutions to bring lawsuits against brokers based on purchase price misrepresentations years after the transaction would encourage lenders to make financially risky investments and be against public policy.  This investment would have been less risky, however, had the lender been provided with factually correct information in the first instance.  Unless a duty is imposed, parties to a real estate transaction will be free to engage in misrepresentations without liability so long as the loan is subsequently sold to a third party.  Instead, there is a strong public policy in favor of discouraging agents in a real estate transaction from falsely providing material information to lenders, whether it is by honest mistake or influenced by the opportunity for financial gain, and providing injured parties with a remedy when such misrepresentations do occur.  The moral blame in such transactions similarly lies with the party that provided the misrepresentations.

The factors outlined above weigh in favor of finding that Premier and Bhatti owe a duty to plaintiff as a third party

10

to the real estate transaction at issue.  Accordingly, the court will deny Premier and Bhatti's motion to dismiss plaintiff's claim for negligence.

### B. Negligent Misrepresentation Claim (Fourth Claim)

The elements of negligent misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007).

In order to state a claim for negligent misrepresentation, plaintiff must plead that Premier and Bhatti's misrepresentation was made with the intent to induce reliance on the representation.  See Gagne v. Bertran, 42 Cal. 2d 481, 488 (1954).  If, as discussed above, plaintiff was assigned Kay-Co's claims, then intent to induce reliance is clearly established. Premier and Bhatti's representations were made with the intent to influence the lender to make a loan based on the purchase price of the Weisbly Property being $499,000 instead of $449,000.

Even if plaintiff was not assigned Kay-Co's claims, suppliers of information can also be liable for negligent misrepresentation to third parties.  The California Supreme Court noted in Bily that, "a supplier of information is liable for negligence to a third party only if he or she intends to supply the information for the benefit of one or more third parties in a specific transaction or type of transaction identified to the

11

supplier." Bily, 3 Cal. 4th at 392.  In Bily, a group of investors sued an auditing company for negligent misrepresentation, claiming that they relied upon the audit reports when deciding whether to make an investment in the audited company.  Id. at 377.  The court held that an auditor may be held liable for negligent misrepresentation to third parties who are known to the auditor (even if their individual identities are unknown) because the audits were also intended to benefit investors.  Id. at 408.

"It is not necessary for the supplier of information to have any particular person in mind as the intended, or even probable, recipient of the information.  It is sufficient that the maker of the information intends it to reach and influence a class of persons who might reasonably be expected to take some action in reliance on the information."  F.D.I.C. v. GB Escrow, Inc., No. CV 11-05318, 2011 WL 4550831, at *3 (C.D. Cal. Sept. 28, 2011) (citing Soderberg v. McKinney, 44 Cal. App. 4th 1760, 1768-69 (2d Dist. 1996)).  As a lending institution in the business of investing in real estate loans, IndyMac was part of the class of persons who could reasonably be expected to rely on the reported purchase price of a loan in determining whether to invest in the loan.  As discussed above and drawing all reasonable inferences in favor of plaintiff, the court finds that the moving defendants intended to influence the original lender as well as subsequent purchasers of the loan in reporting the purchase price of the property.

The element of justifiable reliance also requires that a plaintiff "acted in reliance upon the truth of the

12

representation." Nero v. Evans, Civ. No. 09-958, 2011 WL 2680483, at *9 (S.D. Cal. July 8, 2011) (emphasis added). Plaintiff alleges that "INDYMAC was damaged because it relied upon the representation made by PREMIER VALLEY and BHATTI in making the decision to purchase the WEISBLY LOAN." (Compl. ¶ 44.) Plaintiff's pleadings are sufficient to establish that plaintiff acted in reliance upon the truth of the representation. Accordingly, the court will deny Premier and Bhatti's motion to dismiss plaintiff's claim for negligent misrepresentation.

C. Statute of Limitations

A statute of limitations defense "may be raised by a motion for dismissal or by summary judgment motion." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). "If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." Id.

Plaintiff's action was filed in July 2011, while many of the events giving rise to the claim occurred in late 2006. Premier and Bhatti have accordingly challenged plaintiff's claims as being time-barred. The moving defendants argue that the court should apply a two-year statute of limitations, which is the applicable statute of limitations for both the negligent performance of professional services and negligent misrepresentation by a professional. See Cal. Code Civ. Proc. § 339(a); Hydro-Mill Co. Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., 115 Cal. App. 4th 1145, 1159 (2d Dist. 2004) (applying two-year statute of limitations to professional negligence claim); Ventura Cnty. Nat'l Bank v. Macker, 49 Cal. App. 4th 1528, 1530-31 (2d Dist. 1996) (applying two-year statute of

13

limitations to negligent misrepresentation claim raised against an accounting professional).

Premier and Bhatti argue that the facts constituting negligence and misrepresentation should have been apparent to Kay-Co, and thus IndyMac, on December 18, 2006, which the HUD-1 Settlement Statement indicated was the proration date. Defendants thus argue that the statute of limitations to raise claims relating to the Weisbly Loans expired on December 18, 2008, more than two years before plaintiff filed the present suit.

California law supplies the statue of limitations to be applied in a diversity action on state law claims. Walker v. Armco Steel Corp., 446 U.S. 740, 752-53 (1980). However, jurisdiction in the present case is not predicated on diversity jurisdiction, but rather on the court's original jurisdiction to hear suits in which the FDIC is a party. 12 U.S.C. § 1819(b)(2)(A). The applicable statute of limitations for a tort claim brought by the FDIC as a conservator or receiver is the longer of the three-year period beginning on the date the claim accrues or the period applicable under state law. Id. § 1821(d)(14)(A)(ii).[2] "[T]he date on which the statute of limitations begins to run on any claim . . . shall be the later of: (I) the date of the appointment of the [FDIC] as conservator or receiver; or (ii) the date on which the cause of action

---

[2] "[T]he applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be in the case of any tort claim . . . , the longer of (I) the 3-year period beginning on the date the claim accrues; or (II) the period applicable under State law." 12 U.S.C. § 1821(d)(14)(A)(ii).

14

accrues." Id. § 1821(d)(14)(B).

Here, the FDIC was appointed as the receiver of IndyMac on July 11, 2008, pursuant to Order No. 2008-24 issued by the Office of Thrift Supervision. (Opp'n to Mot. to Dismiss at 11:7-10.) The three-year statute of limitations for the FDIC to raise tort claims on behalf of IndyMac therefore expired on July 11, 2011. The present suit was filed on July 6, 2011, and therefore was filed within the statute of limitations for tort claims raised by the FDIC as a receiver. Even if Premier and Bhatti are correct that the state law statute of limitations expired on plaintiff's claims on December 18, 2008, the claims did not expire prior to the FDIC being appointed the receiver of IndyMac.

Premier and Bhatti further argue that where the facts giving rise to the complaint occurred several years before the complaint was filed, the plaintiff is obligated to "plead around" and show facts demonstrating why the statute of limitations does not apply. (Reply to Mot. to Dismiss at 5:16-19.) Since plaintiff did not include the date on which the FDIC became the receiver for IndayMac in the Complaint, defendants claim that it was not evident from the face of the Complaint that the statue of limitations had not expired. (Id. at 5:19-25.) Defendants' reliance on Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899 (7th Cir. 2004), to show that plaintiff was required to "plead around" the statute of limitations defense is misplaced. The court in Xechem explicitly states that "plaintiffs need not anticipate and attempt to plead around all potential defenses." Id. at 901. Plaintiffs are required to "plead around" the statute of limitations in their complaint where the statute of

15

limitations has expired and the plaintiff is claiming an exception to the statute of limitations such as tolling or delayed discovery.  See Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991) (delayed discovery); 389 Orange Street Partners v. Arnold, 179 F.3d 656, 662 (9th Cir. 1999) (fraudulent concealment).

Here, plaintiff is not arguing that the statute of limitations should be extended for its claims, but rather that defendants applied the wrong statue of limitations when they relied on the state law statute of limitations.  While it would have avoided confusion if plaintiff had affirmatively plead the date when the FDIC was appointed the receiver of IndyMac, there is no authority presented indicating that plaintiff was required to do so.  Accordingly, the court will deny defendants' motion to dismiss Premier and Bhatti's claims based upon the statute of limitations.

D.   Motion to Strike

Federal Rule of Civil Procedure 12(f) enables the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike "should not be granted unless it is clear that the matter to be striken could have no possible bearing on the subject matter of the litigation."  Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

Premier and Bhatti move to strike plaintiff's request for attorney's fees.  Plaintiff agrees to strike this request. (Opp'n to Mot. to Dismiss at 12:3-6.)

Premier and Bhatti also move to strike Item 1 of

16

plaintiff's prayer for relief of $587,082.32 in damages.  This figure appears to be the sum of all special damages alleged against all defendants on all causes of action.  (Mot. to Dismiss at 12:10-11.)  As the prayer for relief is against all defendants, the inclusion of damages for both properties is proper.  Accordingly, the court will deny defendants' motion to strike Item 1 of plaintiff's prayer for relief.

      IT IS THEREFORE ORDERED that Premier and Bhatti's motion to dismiss plaintiff's claims for negligence and negligent misrepresentation be, and the same hereby is, DENIED; and Premier and Bhatti's motion to strike be, and the same hereby is, GRANTED in part as to plaintiff's request for attorney's fees and DENIED in part as to Item 1 of plaintiff's prayer for relief.

DATED:  January 20, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

17