UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for INDYMAC BANK, F.S.B.,<br><br>        Plaintiff,<br><br>    v.<br><br>RICHARD K. VARRASSO doing business as Richard Varrasso and Associates and AppraisalTrust.com, an individual; PREMIER VALLEY, INC. doing business as CENTURY 21 M&M ASSOCIATES, a California corporation; and KAREN BHATTI, an individual,<br><br>        Defendants. | No. CIV. 2:11-2628 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac Bank, F.S.B. ("IndyMac") brought this action against defendants Richard K. Varrasso, doing business as Richard Varrasso and Associates and AppraisalTrust.com, Premier Valley, Inc. ("Premier"), doing

1

business as Century 21 M&M Associates, and Karen Bhatti, arising out of the sale of two residential properties.  Plaintiff alleges that defendants obscured the true value of one of the properties and sold it in a sham transaction to a straw buyer, who defaulted on the purchase loans that plaintiff had later acquired.  Premier and Bhatti (collectively, the "moving defendants") now move for summary judgment.

I.   Factual and Procedural Background

In March 2006, Bhatti, working as an agent for Premier, listed for sale on the Multiple Listing Service ("MLS") a property located at 2009 Saint Theresa Way in Modesto, California (the "Weisbly property" or "the Property").  (Bhatti Decl. ¶¶ 1-6 (Docket. No. 103-5); Chartrand Decl. Ex. C ("Bhatti Dep.") at 19:24-25:12 (Docket No. 103-3).)  Bhatti listed the Property on behalf of the seller, Alam Singh, for whom she had sold property before.  (Bhatti Dep. at 14:4-16:5, 31:23-32:23.)

On multiple occasions over the next few months, Bhatti relisted the Property at various prices between $449,000.00 and $480,000.00.  (Id. at 23:9-28:3.)  Bhatti does not recall whether she received offers for the Property during this period.  (Id. at 25:13-21.)

Bhatti eventually enlisted another agent, Sophie Reisiyannejad (also known as "Sophie Nejad"), to help locate a buyer for the Property.  (Bhatti Decl. ¶ 4.)  Bhatti sought out Nejad because Nejad had sold several homes in the same neighborhood as the Property for more than $495,000.00 each. (Id.)  Bhatti and Nejad agreed to an uneven commission split, with Nejad receiving the majority of the commission.  (Id.)

2

            In October 2006, a purchase agreement was signed to sell the Property to Marissa Weisbly for $499,000.00. (Bhatti Dep. Ex. 5.)  The HUD-1 Settlement Statement for the purchase lists $499,000.00 as the sale price but lists a $449,000.00 price on the line used to calculate the commission. (Id. Ex. 7 ("HUD-1 Statement").)  Based on their arrangement, Bhatti received $13,470.00 in commission and Nejad received $17,960.00. (Bhatti Decl. ¶ 6.)  Singh, however, paid Bhatti an additional $25,000.00 out of the sale proceeds. (Id. ¶ 7; Bhatti Dep. 37:2-19.) Bhatti explains this was to repay of number of personal loans for thousands of dollars she had made to Singh and his family over the years, but there was no formal note documenting this debt. (Bhatti Decl. ¶ 7; Bhatti Dep. at 37:9-19.)

            On October 28, 2006, Richard Varrasso conducted an appraisal of the Property, valuing the Property at $520,000.00 (Chartrand Decl. Ex. A ("Varrasso Dep.") Ex. D.)  Varrasso maintains that Bhatti did not have any influence over the appraisal process, although Bhatti did provide Varrasso with the purchase agreement. (Varrasso Dep. at 45:2-5, 46:6-8.)  Varrasso did not include the required listing history of the property in his appraisal, as he did not receive the listing history from Bhatti and believed the home was new and built or developed by Bhatti's husband or family. (Id. at 56:2-24.)  Plaintiff contends that the Property was worth only $400,000.00 as of December 21, 2006. (Paddock Decl. ¶ 3 (Docket No. 108-5).)

            Weisbly financed the purchase with two mortgage loans (the "Weisbly loans") totaling $499,000.00 from Kay-Co Investments, doing business as Pro30 Funding ("Kay-Co"). (Compl.

3

¶ 11 (Docket No. 1).)  Weisbly did not pay the $1,000.00 down payment on the house and does not know who did.  (Chartrand Decl. Ex. D ("Weisbly Dep.") at 29:24-30:7.)  At the time she purchased the Property, Weisbly had no intention of moving into the house or making mortgage payments.  (Id. at 28:5-7, 29:2-5.)  The financial information and employment history on Weisbly's loan application were false.  (Id. at 39:8-45:17.)

IndyMac subsequently purchased the Weisbly loans from Kay-Co on the secondary market as part of a "bulk acquisition" of multiple loans.  (Chartrand Decl. Ex. B ("Gomez Dep.") at 14:8-23; Gomez Decl. ¶¶ 6-10 (Docket No. 108-1).)  After Weisbly failed to make any mortgage payments, IndyMac foreclosed on the Property and ultimately sold it on July 29, 2008, for $140,000.00.  (Weisbly Dep. at 46:16-18; Gomez Dep. at 44:8-52:18.)  Plaintiff retained IndyMac's legal claims after plaintiff was appointed receiver for IndyMac by the Office of Thrift Supervision.  (Compl. ¶ 1.)

Plaintiff filed its Complaint in the Northern District of California on July 6, 2011, alleging six claims for relief.  That court subsequently transferred the case to the Eastern District of California.  (Docket No. 24.)  The Complaint names moving defendants in its third and fourth causes of action, for negligence and negligent misrepresentation, respectively.  (Compl. ¶¶ 33-44.)

On January 21, 2012, the court denied Premier and Bhatti's motion to dismiss plaintiff's claims for negligence and negligent misrepresentation and granted in part and denied in part Premier and Bhatti's motion to strike.  (Docket No. 37.)

4

1  Premier and Bhatti now move for summary judgment or, in the
2  alternative, summary adjudication.  (Docket No. 103.)
3  II.  Evidentiary Objections
4          On a motion for summary judgment, "[a] party may object
5  that the material cited to support or dispute a fact cannot be
6  presented in a form that would be admissible in evidence."  Fed.
7  R. Civ. P. 56(c)(2).  "[T]o survive summary judgment, a party
8  does not necessarily have to produce evidence in a form that
9  would be admissible at trial, as long as the party satisfies the
10 requirements of Federal Rules of Civil Procedure 56."  Fraser v.
11 Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting Block v.
12 City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001))
13 (internal quotation marks omitted).  Even if the non-moving
14 party's evidence is presented in a form that is currently
15 inadmissible, such evidence may be evaluated on a motion for
16 summary judgment so long as the moving party's objections could
17 be cured at trial.  See Burch v. Regents of the Univ. of Cal.,
18 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (Shubb, J.).
19         Moving defendants raise eight evidentiary objections
20 (Docket No. 110-2), objecting to portions of two declarations
21 submitted by plaintiff on grounds of relevance, materiality, lack
22 of foundation, improper legal opinion or conclusion, and
23 improperly uncertain expert testimony.
24         Objections to evidence on the ground that the evidence
25 is irrelevant, vague and ambiguous, or constitutes an improper
26 legal conclusion are all duplicative of the summary judgment
27 standard itself.  See Burch, 433 F. Supp. 2d at 1119-20.  A court
28 can grant summary judgment only when there is no genuine dispute

of material fact.  Statements based on improper legal conclusions or without personal knowledge are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment.  Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency.  Objections on any of these grounds are superfluous, and the court will overrule them.

Because the court does not rely on any remaining evidence objected to in these declarations, the moving defendants' remaining objections are overruled as moot.

III. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the

burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  Id.

IV.  Analysis

    A.  Negligence

To prove a cause of action for negligence, a plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998).

        1. Duty

"The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal.

7

App. 4th 269, 278 (4th Dist. 2004).  In denying the moving defendants' motion to dismiss, the court previously rejected the moving defendants' contention that they owed no duty to plaintiff.  (Jan. 23, 2012 Order at 10:27–11:1 (Docket No. 37).)  The moving defendants again raise the issue of duty, but neither cite new precedent nor identify facts sufficient to disturb the court's previous determination.

As the court previously noted, a real estate agent owes a duty to deal fairly and honestly with all parties in a transaction, Nguyen v. Scott, 206 Cal. App. 3d 725, 736 (1st Dist. 1988), as well as a general duty to third parties in certain factual situations.  See Norman I. Krug Real Estate Invs., Inc. v. Praszker, 220 Cal. App. 3d 35, 42-43 (1st Dist. 1990) (applying a five-factor test to determine broker liability to third parties).  Here, the moving defendants owed Kay-Co, a party to the transaction, a duty to act fairly and honestly in the transaction.  Because plaintiff now "stands in the shoes" of Kay-Co, it may sue to enforce that duty.  See Johnson v. County of Fresno, 111 Cal. App. 4th 1087, 1096 (5th Dist. 2003) ("The assignment merely transfers the interest of the assignor.  The assignee 'stands in the shoes' of the assignor, taking [its] rights and remedies . . . ." (citations omitted)).[1]  Moving

---

[1] The moving defendants contend that recognizing a duty to plaintiff would subject real estate brokers to "ongoing duties" to third party strangers after transactions have closed. (See Defs.' Mem. at 13:9-24 (Docket No. 103-1).)  The duty at issue here is not "ongoing" but rather stems directly from the transaction.  Plaintiff alleges wrongdoing "in creating the Purchase Contract and failing to disclose information to Kay-Co. before the transaction closed."  (Pl.'s Mem. of P. & A. at 12:15-16 (Docket No. 108-1).)  Plaintiff does not argue that moving

defendants, therefore, are not entitled to summary judgment on the ground that they did not owe a duty to plaintiff.

          2. Breach

"Ordinarily, the issues of breach and causation are questions of fact for the jury." J.P. ex rel. Balderas v. City of Porterville, 801 F. Supp. 2d 965, 990 (E.D. Cal. 2011) (Ishii, J.) (citing Lindstrom v. Hertz Corp., 81 Cal. App. 4th 644, 652 (2d Dist. 2000)). "However, in an appropriate case in which there is insufficient evidence, a defendant's lack of negligence may be determined on summary judgment." Id.

Although they primarily contest the elements of duty, causation, and damages, the moving defendants essentially argue that there are no facts establishing a dispute about whether Bhatti failed to act fairly and honestly in the transaction. The moving defendants assert they "had absolutely nothing to do with" the fraud of Weisbly, who was represented by her own real estate agent, Nejad. (Defs.' Mem. at 10:3-5.) During her deposition, Bhatti testified she did not know Weisbly and had not interacted with Nejad prior to selling the Weisbly property. (Bhatti Dep. at 14:2-3, 29:19-24.) Bhatti also testified that the $25,000.00 she received in additional commission from the sale was to pay off a previous debt owed her by Singh, the seller, who was the priest at Bhatti's church. (Bhatti Dep. at 37:9-19.)

Considering the evidence in the light most favorable to plaintiff, however, there are questions of fact as to whether Bhatti, who owed the lender a duty to act fairly and honestly,

---

defendants breached a duty long after escrow closed or after defendants' duties to their own client ended.

knew or should have known that the sale was not legitimate.  At best, a jury could reasonably infer that, given Bhatti's previous inability to sell the Property for several months at a lower listing price, (Bhatti Dep. at 23:9-28:3), Bhatti should have known the Property was overvalued and there was a possibility that Weisbly was not a legitimate purchaser.

At worst, a jury could infer from Bhatti's commission based on the undocumented loan to the seller that Bhatti had a substantial stake in making the sale, (Bhatti Dep. at 37:14-19), and may have influenced or intentionally withheld information from the Varrasso appraisal to ensure a high price.  (Varrasso Dep. at 56:2-24.)  A jury could also infer dishonesty in the transaction from the price discrepancy on the HUD-1 Statement, as although moving defendants contend this was a scrivener's error, plaintiff argues such a mistake is "highly irregular." (Deutscher Decl. ¶ 5 (Docket No. 108-4).)

These inferences and credibility determinations are best left for the jury to decide.  See Anderson, 477 U.S. at 255.  Plaintiff, therefore, has established genuine issues of material fact on the element of breach.

### 3. Causation

To show causation, a plaintiff must prove: "(1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability." Leslie G. v. Perry & Assocs., 43 Cal. App. 4th 472, 481 (2d Dist. 1996).  Under California law, the basic causation-related issues involve questions of fact, unless reasonable

persons will not dispute the absence of causality. Vickers v. United States, 228 F.3d 944, 953 (9th Cir. 2000) (citing Constance B. v. State of California, 178 Cal. App. 3d 200, 207-08 (3d Dist. 1986)). Summary judgment is improper if the question of whether the actor's conduct "was a substantial factor in bringing about the plaintiff's harm is open to reasonable difference of opinion." Id. at 954 (internal citations and quotations omitted).

Plaintiff ultimately seeks damages from the Property being overvalued and the loan being under-secured. Plaintiff offers two arguments causally connecting the moving defendants' wrongdoing to plaintiff's harm.

First, plaintiff contends that Bhatti sold the Property above its actual value. (Pl.'s Opp'n at 8:18-22.) Had Bhatti disclosed the true value of the property, plaintiff argues, Kay-Co. would have never funded the loans. (Id. at 9:2-6.) At a more fundamental level, had Bhatti not sought out Nejad or approved the sale to Weisbly, the transaction would not have taken place to begin with. (Id. at 8:23-9:3.)

Second, plaintiff contends Bhatti's nondisclosure regarding the Property's true value enabled IndyMac to purchase the loans. According to plaintiff, IndyMac purchased the Weisbly loans on the secondary market as part of a bulk package of residential mortgage loans with a maximum loan-to-value ratio. (Gomez Decl. ¶¶ 7-10.) The loan purchase considered a number of "data points" including the purchase price, along with Varrasso's appraisal, allegedly influenced by Bhatti. (Gomez Dep. at 22:9-16, 25:11-19.) Plaintiff argues that if the purchase price had

11

more accurately reflected the value of the Property, IndyMac would not and could not have purchased the loans, given that the loans would have been under-secured according to IndyMac's formula.  (Gomez Decl. ¶ 11.)

Based on these facts and inferences, whether the moving defendants' negligence in making the sale was a "substantial factor" in causing the lender to suffer losses on the purchase loan is not beyond "reasonable difference of opinion." Vickers, 228 F.3d at 954.  Moving defendants, therefore, are not entitled to summary judgment on the issue of causation.

### 4. Damages

The moving defendants' final argument, that plaintiff did not suffer damages, fails because the argument relies on the Varrasso appraisal valuing the Property at $520,000.00.  (Defs.' Mem. at 7:25-8:7.)  Moving defendants contend that because the Varrasso appraisal valued the Property at $520,000.00, the Property was worth more than the loans purchased by IndyMac at $499,000.00, and thus IndyMac suffered no loss from the transaction.  (Id.)  This ignores, however, that the accuracy of the Varrasso appraisal is a factual question at issue in this case.  (See Paddock Decl. ¶ 3 (valuing the Property in late 2006 at $400,000.00).)  The Varrasso appraisal is insufficient to establish that plaintiff did not suffer damages as a matter of law.[2]

---

[2]   Moving defendants also argue that plaintiff's damages were partly the result of market conditions, which resulted in a decline in residential property values across the region. (Defs.' Mem. at 8:8-25.)  Other courts invited to follow this line of reasoning have declined to do so.  See F.D.I.C. v. Van Dellen, No. CV 10-4915 DSF (SHx), 2012 WL 4815159, at *10 (C.D.

Accordingly, because a disputed issue of material fact remains with respect to whether Bhatti breached her duty to act fairly and honestly in the transaction, and whether that breach caused damages to plaintiff, the court will deny the moving defendants' motion for summary judgment on plaintiff's negligence claim.

B.   Negligent Misrepresentation

The elements of negligent misrepresentation are: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007). "Liability for negligent misrepresentation must flow from an assertion of material fact, not from an implied representation or nondisclosure." Wilson v. Household Fin. Corp., No. CIV S-12-1413 KJM AC, 2013 WL 1310589, at *4 (E.D. Cal. Mar. 28, 2013) (citing Yanase v. Auto. Club of So. Cal., 212 Cal. App. 3d 468, 473 (4th Dist. 1989)).

Plaintiff originally contended that Bhatti misrepresented the purchase price of the Property as $499,000.00,

---

Cal. Oct. 5, 2012) ("While evidence on the subject of the economic downturn is admissible, the downturn is not a 'superseding cause.' The focus of this action is Defendants' conduct at the time the loans were made."). This argument fails to establish that plaintiff did not suffer damages attributable to the moving defendants. The court accordingly declines to take judicial notice of various economic figures offered by the moving defendants. (See Req. for Judicial Notice (Docket No. 103-6).)

13

and that the true purchase price was some lower amount.  (See Compl. at ¶¶ 40-43.)  Plaintiff no longer disputes, however, that the purchase price of the Property was $499,000.00.  (Pl.'s Resp. to Defs.'s Separate Stmt. of Undisputed Facts ¶ 20 (Docket No. 108-1).)  Plaintiff instead argues that "Bhatti made the representations in creating the Purchase Contract and failing to disclose information to Kay-Co before the transaction closed."  (Pl.'s Mem. at 12:15-16.)

Other than the purchase contract, which plaintiff contends generally represented the sale as a legitimate transaction, plaintiff does not identify a particular affirmative misrepresentation by Bhatti or Premier.  Rather, the heart of plaintiff's case is that "Weisbly's fraudulent purchase of the Property was only possible because of Bhatti's <u>failure to disclose</u>" that the Property was overvalued and under-secured and that "Indymac was damaged as a direct and proximate result of Bhatti's <u>omissions</u>."  (Pl.'s Opp'n at 4:21-24 (emphasis added); <u>see also</u> <u>id.</u> at 9:2-3 ("Bhatti never disclosed to Kay-Co that the ultimate purchase price well exceeded the known value of the Property."); <u>id.</u> at 11:19-21 ("[H]ad Defendants accurately disclosed that the Property's known value was less than the amount in the Purchase Contract, the Loans could not have been sold to IndyMac in the first instance . . . .").)

Although plaintiff suggested at oral argument that defendants affirmatively misrepresented the value of the Property, no documents support this contention.  The closest plaintiff comes to an affirmative representation of value is the purchase price, which, as discussed above, plaintiff admits was

14

1 accurate.  At most, the purchase contract impliedly represented
2 that the transaction was legitimate.  However, "the doctrine [of
3 negligent misrepresentation] does not apply to implied
4 representations."  Yanase, 212 Cal. App. 3d at 473; see also
5 Wilson, 2013 WL 1310589, at *4.  Plaintiff's claim therefore
6 fails because implication or omission cannot form the basis of an
7 action for negligent misrepresentation.  Accordingly, because
8 plaintiff has failed to establish a triable issue with respect to
9 its negligent misrepresentation claim, the court will grant
10 moving defendants' motion for summary judgment that claim.
11         IT IS THEREFORE ORDERED that Premier and Bhatti's
12 motion for summary judgment be, and the same hereby is, DENIED as
13 to plaintiff's negligence claim and GRANTED as to plaintiff's
14 negligent misrepresentation claim.
15 Dated:  September 30, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE